## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Bell Bank, | Case No. 25-CV-4479 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Mahendra Nath, | |
| Defendant. | |

Plaintiff Bell Bank ("Plaintiff" or "Lender"), for its Complaint against Defendant

Mahendra Nath ("Defendant" or "Guarantor"), states and alleges as follows:

### SUMMARY OF ACTION

1.      This is an action to recover amounts due and owing under a personal

guaranty.  On January 17, 2019, Plaintiff extended a $24,000,000 loan to non-party Nath

Roseville Midwest Lodging, LLC ("Borrower").  In connection with the loan, Defendant

executed and delivered to Plaintiff a Guaranty pursuant to which he irrevocably and

unconditionally personally guaranteed the full and punctual performance of all of

Borrower's payment and other obligations under the governing loan documents.

2.      Borrower repeatedly failed to perform its payment and other obligations

under the loan documents, and the numerous defaults have been acknowledged by

Borrower and Defendant in various forbearance agreements and amendments to the loan

documents that were negotiated and executed by Defendant and Borrower in consultation

with their counsel.  On June 4, 2025 and again on November 18, 2025, Plaintiff (A) notified

Defendant and Borrower of various events of default under the loan documents and (B)

exercised its right to accelerate and demand payment in full of the entire outstanding amount of the loan, which was $20,351,347.58 as of November 17, 2025.

3.       Defendant has failed to perform his obligations under the Guaranty, including the obligation to timely pay the entire outstanding amount due under the loan documents.  Moreover, on numerous occasions, including as recently as December 20, 2022, Defendant specifically and expressly waived and released any and all defenses to this action.  Accordingly, Plaintiff seeks quick and timely judgment against Defendant for all sums due under the loan documents and Guaranty, including all outstanding principal, accrued interest, default interest, late fees, attorneys' fees, costs, and expenses, together with post-judgment interest and such other relief as the Court deems just and proper.

## PARTIES

4.       Plaintiff is a North Dakota state-chartered banking corporation with its corporate headquarters located at 520 Main Avenue, Fargo, ND 58103.  Plaintiff's principal place of business at which its high level officers direct, control, and coordinate Plaintiff's activities is also located at 520 Main Avenue, Fargo, ND 58103.

5.       Defendant is an individual and resident of Minnesota.  Defendant resides at 105 West Pleasant Lake Road, North Oaks, MN 55127.

## JURISDICTION AND VENUE

6.       This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1).  Plaintiff and Defendant are citizens of different states, as Plaintiff is a citizen of North Dakota and Plaintiff is a citizen of Minnesota.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as Plaintiff seeks judgment

against Defendant under the terms of a guaranty agreement for an amount in excess of $20,000,000.

7.     This Court has personal jurisdiction over Defendant as a Minnesota resident.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred, in this District.

## FACTUAL BACKGROUND

### A.     THE LOAN AND THE INITIAL LOAN DOCUMENTS

9.     On  January 17, 2019, Lender extended a loan to Borrower, in the original principal sum of $24,000,000 ("Loan").  The terms and conditions of the Loan are set forth in that certain Loan Agreement executed by Borrower, in favor of Lender, dated January 17, 2019 ("Loan Agreement").  A true and correct copy of the Loan Agreement is attached as **Exhibit 1** and incorporated herein by reference.

10.     The Loan was evidenced by that certain Promissory Note, dated January 17, 2019, in the original principal amount of $24,000,000 ("Note").  A true and correct copy of the Note is attached as **Exhibit 2** and incorporated herein by reference.

11.     The Loan and Borrower's obligations under the Loan Agreement were guaranteed by Defendant pursuant to that certain Guaranty, dated January 17, 2019 ("Guaranty"), executed by Defendant in favor of Lender.  A true and correct copy of the Guaranty is attached hereto as **Exhibit 3** and incorporated herein by reference.

12.     The Loan Agreement, Note, Guaranty, and all other documents executed in connection with the Loan as identified and defined in the Loan Agreement, and as amended

from time to time as set forth below, are referred to herein collectively as the "Loan Documents."

**B.    FIRST AMENDMENT TO LOAN AGREEMENT**

13.    On February 3, 2020, Plaintiff and Borrower executed that certain First Amendment to Loan Agreement ("First Amendment").  A true and correct copy of the First Amendment is attached hereto as **Exhibit 4** and incorporated herein by reference.

14.    Section 12 of the First Amendment memorialized Borrower's then-default as follows:

> Existing Default; No Waiver. Pursuant to Section 5.13 of the Loan Agreement, the Borrower is required to, among other things, perform and observe all of the payment terms and other material terms and provisions of each Material Contract to be performed or observed by the Borrower. The Borrower failed to complete the Hotel Work (as defined in the Franchise Agreement) on or before the Construction Work Completion Date (as defined in the Franchise Agreement), as required under Section 6.3.2 of the Franchise Agreement. Such failure constitutes an Event of Default under Section 7.1(c) of the Loan Agreement (the "Existing Default"). Although entitled to do so as a result of the Existing Default, the Lender has elected to not immediately exercise any of its rights and remedies under the Loan Agreement, the other Loan Documents or under applicable law. The election of the Lender to not immediately exercise all rights and remedies it may have with regard to the Existing Default shall not be deemed a waiver thereof, and shall not prevent the Lender from exercising them at its discretion hereafter. Nothing contained in this Amendment (or in any other agreement or understanding) shall constitute a waiver of, or shall otherwise diminish or impair, any of the rights or remedies available to the Lender under the Loan Agreement or any of the other Loan Documents, or under applicable law, it being expressly understood and agreed that all such rights and remedies are retained by, and are reserved unto, the Lender. Without limiting the generality of the foregoing, the Borrower is expressly notified that the Lender has not waived the Existing Default.

Ex. 4 § 12 (underlining in original).

15.    In connection with the First Amendment, Guarantor executed an Acknowledgement of Guarantor that provided as follows:

> Pursuant to the terms of a certain Guaranty dated January 17, 2019 (the "Guaranty"), executed by the undersigned in favor of BELL BANK, a North Dakota banking corporation (the "Lender"), the undersigned has unconditionally guaranteed the prompt payment and full performance of all of the debts, liabilities and obligations of NATH ROSEVILLE MIDWEST LODGING, LLC, a Minnesota limited liability company (the "Borrower") to the Lender, which debts, liabilities and obligations include, without limitation, the obligations of the Borrower under that certain Loan Agreement dated as of January 17, 2019 by and between the Borrower and the Lender (as the same may be hereafter further amended from time to time, the "Loan Agreement"). The undersigned acknowledges receipt of a copy of the proposed First Amendment to Loan Agreement dated on or about the date hereof (the "Amendment"). The undersigned agrees and acknowledges that the Amendment shall in no way impair or limit the rights of the Lender under the Guaranty or any other Loan Document (as such term is defined in the Loan Agreement) to which the undersigned is a party, and confirms that by its Guaranty the undersigned continues to unconditionally guarantee the prompt payment and full performance of all of the debts, liabilities and obligations of the Borrower to the Lender, including without limitation obligations under the Loan Agreement as amended pursuant to the Amendment. In addition, the undersigned represents that no events have taken place and no circumstances exist at the date hereof which would give the undersigned grounds to assert a defense, offset or counterclaim to the obligations of the undersigned under the Guaranty or any of the other Loan Documents to which the undersigned is a party and there are no known claims, causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character or nature whatsoever, fixed or contingent, which the undersigned may have or claim to have against the Lender, which might arise out of or be connected with any act of commission or omission of the Lender existing or occurring on or prior to the date of the Amendment, including, without limitation, any claims, liabilities or obligations arising with respect to the Guaranty or indebtedness evidenced by the Note (as defined in the Loan Agreement). In consideration of the mutual covenants and conditions set forth above and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby joins in the release of rights and claims set forth in Section 10 of the Amendment. The undersigned hereby confirms that the Guaranty and all other Loan Documents to which

the undersigned is a party remain in full force and effect, enforceable against the undersigned in accordance with their terms.

This Acknowledgment shall not be construed, by implication or otherwise, as imposing any requirement that Lender notify or seek the consent of the undersigned relative to any past or future extension of credit, or modification, extension or other action with respect thereto, in order for any such extension of credit or modification, extension or other action with respect thereto to be subject to the Guaranty, it being expressly acknowledged and reaffirmed that the undersigned has under the Guaranty consented to modifications, extensions and other actions with respect thereto without any notice thereof.

Ex. 4 at 5 (underlining in original).

## C.    SECOND AMENDMENT TO LOAN AGREEMENT

16.    On February 28, 2020, Plaintiff and Borrower executed that certain Second Amendment to Loan Agreement and Waiver ("Second Amendment").  A true and correct copy of the Second Amendment is attached hereto as **Exhibit 5** and incorporated herein by reference.

17.    Section 2 of the Second Amendment memorialized Plaintiff's agreement to waive the "Existing Default" subject to Borrower's full satisfaction of the conditions set forth therein as follows:

Waiver. The Borrower has requested that the Lender waive the Existing Default (as defined in the First Amendment), and subject to the full satisfaction of all the conditions set forth in Section 1 above, the Lender hereby waives the Existing Default. All provisions of the Loan Agreement remain in full force and effect and the foregoing waiver shall not apply to any other or subsequent failure to comply with the Sections of the Loan Agreement identified in Section 12 of the First Amendment, or any other provision of the Loan Agreement.

Ex. 5 § 2 (underlining in original)

18.    In connection with the Second Amendment, Guarantor executed an Acknowledgement of Guarantor that provided as follows:

6

Pursuant to the terms of a certain Guaranty dated January 17, 2019 (the "Guaranty"), executed by the undersigned in favor of BELL BANK, a North Dakota banking corporation (the "Lender"), the undersigned has unconditionally guaranteed the prompt payment and full performance of all of the debts, liabilities and obligations of NATH ROSEVILLE MIDWEST LODGING, LLC, a Minnesota limited liability company (the "Borrower") to the Lender, which debts, liabilities and obligations include, without limitation, the obligations of the Borrower under that certain Loan Agreement dated as of January 17, 2019 by and between the Borrower and the Lender (as previously amended, and as the same may be hereafter further amended from time to time, the "Loan Agreement"). The undersigned acknowledges receipt of a copy of the proposed Second Amendment to Loan Agreement and Waiver dated on or about the date hereof (the "Amendment"). The undersigned agrees and acknowledges that the Amendment shall in no way impair or limit the rights of the Lender under the Guaranty or any other Loan Document (as such term is defined in the Loan Agreement) to which the undersigned is a party, and confirms that by its Guaranty the undersigned continues to unconditionally guarantee the prompt payment and full performance of all of the debts, liabilities and obligations of the Borrower to the Lender, including without limitation obligations under the Loan Agreement as amended pursuant to the Amendment. In addition, the undersigned represents that no events have taken place and no circumstances exist at the date hereof which would give the undersigned grounds to assert a defense, offset or counterclaim to the obligations of the undersigned under the Guaranty or any of the other Loan Documents to which the undersigned is a party and there are no known claims, causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character or nature whatsoever, fixed or contingent, which the undersigned may have or claim to have against the Lender, which might arise out of or be connected with any act of commission or omission of the Lender existing or occurring on or prior to the date of the Amendment, including, without limitation, any claims, liabilities or obligations arising with respect to the Guaranty or indebtedness evidenced by the Note (as defined in the Loan Agreement). In consideration of the mutual covenants and conditions set forth above and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby joins in the release of rights and claims set forth in Section 11 of the Amendment. The undersigned hereby confirms that the Guaranty and all other Loan Documents to which the undersigned is a party remain in full force and effect, enforceable against the undersigned in accordance with their terms.

This Acknowledgment shall not be construed, by implication or otherwise, as imposing any requirement that Lender notify or seek the consent of the undersigned relative to any past or future extension of credit, or modification, extension or other action with respect thereto, in order for any such extension of credit or modification, extension or other action with respect thereto to be subject to the Guaranty, it being expressly acknowledged and reaffirmed that the undersigned has under the Guaranty consented to modifications, extensions and other actions with respect thereto without any notice thereof.

Ex. 5 at 5 (underlining in original).

## D.    FORBEARANCE AGREEMENT

19.    On June 14, 2020, Plaintiff, Borrower and Guarantor executed that certain Forbearance Agreement, Third Amendment to Loan Agreement and First Amendment to Guaranty ("Forbearance Agreement").   A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit 6** and incorporated herein by reference.

20.    Recitals E and F of the Forbearance Agreement specified the following events of default under the Loan Documents:

E.    Specified Defaults.

1.    12/31/19 Reporting Defaults. Pursuant to (a) Section 5.1(a)(i) of the Loan Agreement, the Borrower is required to, among other things, furnish to the Lender, within 90 days after the end of each fiscal year of the Borrower, the annual financial statements referred to in such Section; (b) Section 5.1(c) of the Loan Agreement, the Borrower is required to, among other things, furnish to the Lender, within 30 days after the end of each fiscal quarter of the Borrower, the quarterly financial statements referred to in such Section; and (c) Section 5.1(e) of the Loan Agreement, the Borrower is required to, among other things, furnish to the Lender, together with the annual financial statements described in Section 5.1(a) of the Loan Agreement, a completed compliance certificate in the form required pursuant to such Section 5.1(e). The Borrower failed to furnish all such financial statements and compliance certificate for the fiscal year and fiscal quarter ending on December 31, 2019. Each such instance of noncompliance constitutes an Event of Default under Section 7.1(c)

of the Loan Agreement (collectively, the "12/31/19 Reporting Defaults").

2.    Debt Service Coverage Before Distributions Ratio. Pursuant to Section 6.12(a) of the Loan Agreement, the Borrower is prohibited from permitting its Debt Service Coverage Before Distributions Ratio to be less than 1.30 to 1.00 as of the last day of each fiscal year, determined for the period of four fiscal quarters ending on such date. Notwithstanding the 12/31/19 Reporting Defaults, the Borrower advised the Lender that its Debt Service Coverage Before Distributions Ratio was less than 1.30 to 1.00 for the period of four fiscal quarters ending December 31, 2019. Such noncompliance constitutes an Event of Default under Section 7.1(c) of the Loan Agreement (the "DSC Before Distributions Default").

3.    Debt Service Coverage After Distributions Ratio. Pursuant to Section 6.13 of the Loan Agreement, the Borrower is prohibited from permitting its Debt Service Coverage After Distributions Ratio to be less than 1.05 to 1.00 as of the last day of each fiscal year, determined for the period of four fiscal quarters ending on such date. Notwithstanding the 12/31/19 Reporting Defaults, the Borrower advised the Lender that its Debt Service Coverage After Distributions Ratio was less than 1.05 to 1.00 for the period of four fiscal quarters ending December 31, 2019. The Borrower is hereby notified that such noncompliance constitutes an Event of Default under Section 7.1(c) of the Loan Agreement (the "DSC After Distributions Default", and collectively with the DSC Before Distributions Default and the 12/31/19 Reporting Defaults, the "Specified Defaults").

4.    April 2020 Default Letter. Lender provided Borrower written notice of the Specified Defaults by letter dated April 15, 2020 (the "April 2020 Default Letter").

F.    New Defaults. After sending the April 2020 Default Letter, the Lender became aware of the following additional Events of Default (collectively, the "New Defaults", and together with the Specified Defaults, the "Existing Defaults"):

1.    April 15 Interest Payment. The Borrower failed to make timely payment of the interest payment that was due on April 15, 2020, as required under Section 2.3(a) of the Loan Agreement. Such non-compliance constitutes an Event of Default under Section 7.1(a) of the Loan Agreement.

2. <u>Park State Bank Indebtedness and Lien</u>. The Borrower incurred certain Indebtedness in favor of Park State Bank (the "<u>PSB Indebtedness</u>") in the original principal amount of $3,000,000 pursuant to a certain Universal Note dated as of March 29, 2019, and purported to grant Park State Bank a Lien on certain of its assets (including deposit account #2210183 maintained at Park State Bank (the "<u>PSB Deposit Account</u>")) as security for such Indebtedness pursuant to a certain Commercial Security Agreement dated as of March 29, 2019. Park State Bank is an Affiliate of the Borrower under the Loan Agreement by virtue of Andrew J. Redleaf's common control and/or ownership interests in Park State Bank and the Borrower. Such incurrence of Indebtedness, grant of a Lien and Affiliate transaction is a violation of certain provisions of the Loan Agreement, including without limitation <u>Sections 6.6</u>, <u>6.7</u> and <u>6.11</u> therein. Each such instance of noncompliance constitutes an Event of Default under <u>Section 7.1(c)</u> of the Loan Agreement.

3. <u>Bridgewater Contingent Obligation and Lien</u>. The Borrower incurred a certain Contingent Obligation by virtue of granting a Lien on certain of its assets (including that certain deposit account #83069617 of the Borrower's maintained at Bridgewater Bank (the "<u>BWB Deposit Account</u>")) as security for certain Indebtedness incurred by its Affiliate, Nath Midwest Lodging, LLC ("<u>NML</u>"), all as more particularly set forth in a certain Account Pledge, Assignment and Security Agreement dated as of February 12, 2019 made by the Borrower in favor of Bridgewater Bank. Such incurrence of Contingent Obligation, grant of Lien, and Affiliate transaction is a violation of certain provisions of the Loan Agreement, including without limitation <u>Sections 6.4</u>, <u>6.6</u>, <u>6.7</u> and <u>6.11</u> therein. Each such instance of noncompliance constitutes an Event of Default under <u>Section 7.1(c)</u> of the Loan Agreement.

4. <u>Materially Misleading Financial Statements</u>. No financial statement of the Borrower delivered to the Lender pursuant to <u>Section 5.1</u> of the Loan Agreement disclosed the Indebtedness, Liens, Contingent Obligation, or Affiliate transactions described in <u>Recitals F.2.</u> or <u>F.3.</u>, above, or the NML Loan referred to in <u>Section 7</u>**Error! Reference source not found.**, below. In addition, the financial statements of the Borrower delivered to the Lender pursuant to <u>Section 5.1</u> of the Loan Agreement included the PSB Deposit Account as an "asset" of the Borrower; yet on June 16, 2020, the Borrower delivered to the Lender certain bank statements of NML that revealed the PSB Deposit Account was actually titled in the name

of NML. The Borrower certified, (a) pursuant to Section 3.2(b) of the Loan Agreement, that the representations and warranties set forth in the Loan Agreement were true and correct in all material respects at the time of each Future Advance, including without limitation the representations and warranties set forth in Section 4.6 of the Loan Agreement, which stated among other things that the Borrower had not incurred any material obligation or contingent liability which is not reflected in such financial statements, and (b) pursuant to certifications accompanying each financial statement delivered pursuant to Sections 5.1(a) and (c) of the Loan Agreement, that such financial statements present fairly the financial condition of the Borrower. Each such materially misleading representation, warranty and certification constitutes an Event of Default under Section 7.1(b) of the Loan Agreement.

5.    Intercompany Payables and Receivables.    The Borrower's annual financial statement for the fiscal year ended December 31, 2019 disclosed certain affiliate receivables and payables set forth on Schedule 5 attached hereto. Such receivables and payables constitute loans, advances, Investments and Indebtedness that are violations of certain provisions of the Loan Agreement, including without limitation Sections 6.5, 6.6 and 6.11 therein. Each such instance of noncompliance constitutes an Event of Default under Section 7.1(c) of the Loan Agreement.

6.    3/31/20 Reporting Defaults. With respect to the fiscal quarter ending on March 31, 2020, the Borrower failed to furnish to the Lender (a) a balance sheet prepared in conformity with GAAP as required pursuant to Section 5.1(c) of the Loan Agreement, and (b) a narrative analysis reviewing the Mortgaged Property's financial performance as required pursuant to Section 5.1(i)(ii) of the Loan Agreement, in each case within the timelines required by such Sections. Each such instance of noncompliance constitutes an Event of Default under Section 7.1(c) of the Loan Agreement.

7.    Guaranty Fee. The tax returns of the Loan Parties for the 2019 calendar year delivered to the Lender pursuant to Section 5.1(d) of the Loan Agreement disclosed payments by the Borrower to the Guarantor in the aggregate amount of $726,230. The company-prepared financial statements for the fiscal quarter ending on March 31, 2020 that were delivered to the Lender pursuant to Section 5.1(c) of the Loan Agreement (which, as noted above, were not prepared in conformity with GAAP) further disclosed Guaranty Fees payable to

the Guarantor in the amount of $143,000. Such payments are prohibited by, and such Guaranty Fees payable (collectively, the "Unauthorized Guarantor Payments"), are in excess of the amounts permitted under, Section 6.11 of the Loan Agreement. Each such instance of noncompliance constitutes an Event of Default under Section 7.1(c) of the Loan Agreement.

*Id.*, Recitals E-F (underlining in original).

21.    Section 1 of the Forbearance Agreement provided:

1.    Recitals; Existing Defaults; Undertakings. In consideration of Lender's agreement to comply with the request of the Loan Parties that Lender forbear from exercising its remedies on account of the Existing Defaults until the Forbearance Termination Date, each Loan Party (a) agrees that the Recitals set forth herein are true and correct and are incorporated herein by reference, (b) acknowledges and admits the occurrence, continuation and current existence of the Existing Defaults, and (c) agrees to undertake the actions and perform the obligations hereinafter set forth.

22.    Section 5 Forbearance Agreement provided, in relevant part, as follows:

5.    Representations and Warranties; Reaffirmation; Agreements. As a material inducement to Lender to enter into this Agreement, each Loan Party represents and warrants to Lender, and, covenants, acknowledges and agrees, as follows:

* * *

(f)    No Claims Against Lender. There are no known claims, causes of action, suits, debts, liens, obligations, liabilities, demands, losses, costs and expenses (including attorneys' fees) of any kind, character or nature whatsoever, fixed or contingent, which any Loan Party may have or claim to have against Lender, which might arise out of or be connected with any act of commission or omission of Lender existing or occurring on or prior to the date of this Agreement, including, without limitation, any claims, liabilities or obligations arising under or evidenced by the Loan Agreement and other Loan Documents. Each Loan Party has received or hereby waives all notice required by Lender under the Loan Documents with respect to the Existing Defaults.

(g)    Effect of this Agreement. This Agreement shall not be construed to (i) impair the validity, perfection or priority of any Lien

12

securing the Obligations, (ii) waive or impair any rights, powers or remedies of Lender under the Loan Documents upon termination of the Forbearance Period, including, without limitation, the right to collect interest at the Default Rate, (iii) give rise to a defense based upon, or establish, a course of dealing or course of performance between Lender and any Loan Party, (iv) constitute an agreement by Lender or require Lender to extend the Forbearance Period, or grant additional forbearance periods, or extend the terms of the Loan Documents or the time for payment of any of the Obligations, except as expressly set forth herein, (v) constitute an extension, modification, or waiver of any aspect of the Loan Documents or any right or remedy thereunder, except as expressly set forth herein, or (vi) give rise to any defenses or counterclaims to Lender's right to compel payment of the Loan or to otherwise enforce its rights and remedies under the Loan Documents.

* * *

(j)     <u>Reaffirmation</u>. Each Loan Party hereby acknowledges and agrees that as of the date of this Agreement (i) the Loan Agreement, the Mortgage, the Guaranty, and all of the other Loan Documents continue in full force and effect and are enforceable in accordance with their terms and are not subject to any defense, right of setoff or counterclaim, (ii) the obligation of each Loan Party to pay and perform the Obligations is absolute and unconditional, (iii) as a consequence of the Existing Defaults, Lender is presently entitled to (A) accelerate and demand immediate repayment of the Loan and all other Obligations but has elected to temporarily forbear exercising such right upon the terms, and subject to the conditions, set forth in this Agreement, and (B) promptly and fully avail itself of any and all rights and remedies available to Lender under the Loan Documents and applicable law, including, without limitation, assessing the Default Rate and foreclosing its Liens upon Mortgaged Property, and (iv) all payments made and Liens granted by any Loan Party to Lender under the Loan Documents and this Agreement are for fair consideration and reasonably equivalent value.

23.    Section 9 of the Forbearance Agreement amended the Original Guaranty as follows:

9.     <u>Amendments to Guaranty</u>. As a condition to the Lender's conditional forbearance contemplated herein, the Lender has required, and

the Guarantor has agreed, to amend certain provisions of the Guaranty as follows:

> (a)    Unlimited Guaranty. Sections 1.2 and 1.3 of the Guaranty are hereby amended and restated in their entirety to read as follows:
>
> > "Section 1.2   [Intentionally Omitted].
> >
> > Section 1.3    [Intentionally Omitted]."
>
> (b)    Guaranteed Obligations. The words "of the Obligations" set forth in Section 2.1(d) of the Guaranty are hereby deleted and replaced with the words "of the Guaranteed Obligations".

*Id*. § 9 (underlining in original).

24.    Section 10 of the Forbearance Agreement provided as follows:

> 10.    Costs, Expenses and Taxes.  Each Loan Party shall pay or reimburse Lender for (a) all out-of-pocket expenses incurred by Lender and its Affiliates, including the fees, charges and disbursements of counsel for Lender, in connection with the negotiation, preparation, execution, delivery and administration of the Loan Documents (including this Agreement) or any amendments, modifications or waivers of the provisions of such Loan Documents (whether or not the transactions contemplated thereby shall be consummated), (b) all out-of-pocket expenses incurred by Lender, including the fees, charges and disbursements of any counsel for Lender, in connection with the enforcement, collection or protection of its rights in connection with such Loan Documents or in connection with the Obligations, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of the Obligations; (c) all out-of-pocket costs and expenses of appraisals, inspections of the Mortgaged Property, title and escrow charges (including title policies, endorsements and updates thereto), insurance reviews, reviewing and processing Future Advance Requests, environmental inspections and reports, surveys, stamp taxes, intangible taxes, recording taxes and fees, registration taxes, including in connection with the Mortgage, public record searches, filing financing statements and continuations, and other actions to perfect, protect, and continue any of the Lender's Liens, background searches, and (d) actual costs and expenses of preserving, protecting and insuring the Mortgaged Property.

25.    Section 12 of the Forbearance Agreement provides as follows:

12. <u>Release of Rights and Claims; Consents and Waivers; Other Agreements</u>.

(a)    Each Loan Party hereby releases, remises, acquits and forever discharges Lender, its subsidiaries, affiliates, and each of their respective employees, agents, representatives, advisors, consultants, attorneys, fiduciaries, servants, officers, directors, partners, predecessors, successors and assigns (all of the foregoing hereinafter called the "<u>Released Parties</u>"), from any and all losses, claims, causes of action, damages, liabilities, actions, judgments, executions, suits, debts, demands, obligations and related expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, for or because of any matter or things done, omitted or suffered to be done by any of the Released Parties prior to and including the date of execution hereof, and in any way directly or indirectly arising out of or in any way connected to this Agreement, the Mortgaged Property, the Loan, the Loan Documents, including but not limited to, claims relating to any settlement negotiations and all communications and correspondence in connection with any of the foregoing, whether oral or written (all of the foregoing hereinafter called the "<u>Released Matters</u>"). Each Loan Party agrees not to commence or join any lawsuit or other legal or equitable action or proceeding in which any Released Party is an adverse party and which involves any of the Released Matters. Each Loan Party acknowledges that the agreements in this <u>Section 120</u> are intended to be in full satisfaction of all or any alleged injuries or damages arising in connection with the Released Matters. Each Loan Party represents and warrants to Lender that such Loan Party has not purported to transfer, assign or otherwise convey any right, title or interest of such Loan Party in any Released Matter to any other Person and that the foregoing constitutes a full and complete release of all Released Matters.

(b)    Each Loan Party hereby agrees that, in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration (including the temporary, conditional forbearance provided for under <u>Section **Error! Reference source not found.**</u> above), the receipt and sufficiency of which are hereby acknowledged, if any Loan Party (by its own action, or the action of any of its shareholders, members, partners, or creditors, if applicable) shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition for relief under the Bankruptcy Code; (ii) be the subject of any order for relief issued under the Bankruptcy

Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator; (v) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, then Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents, and as otherwise provided by law, and each Loan Party hereby waives the benefits of such automatic stay and consents and agrees such Loan Party will not raise any objection to such relief. In connection with such waiver and consent, each Loan Party acknowledges that (i) such Loan Party is doing so freely and willingly, (ii) such Loan Party has been represented at all times by competent and sophisticated professionals who have explained the ramifications thereof, (iii) the consideration for such waiver and consent, including Lender's risk in forbearing hereunder and the length of time such waiver covers, is fair and adequate under the circumstances, and Lender would be otherwise prejudiced if the waiver was not enforced, (iv) other parties affected by such waiver and consent, including unsecured creditors and junior lienholders, if any, will not be prejudiced thereby, (v) such waiver and consent was not obtained by coercion, fraud or mutual mistake of material facts, and (vi) enforcing such waiver and consent will further the legitimate public policy of encouraging out of court restructurings and settlements.

(c)     Without limiting any provision of the Loan Documents, each Loan Party hereby agrees that, upon the occurrence of a Forbearance Default, Lender may secure the appointment of a receiver, trustee, liquidator or similar official with respect to the Mortgaged Property, and each Loan Party hereby consents and agrees to such appointment, without notice to any Loan Party and without regard to the adequacy of the security for the Obligations and without regard to the solvency of any Loan Party or any other Person liable for the payment of the Obligations, and such receiver or other official shall have all rights and powers permitted by applicable law and such

other rights and powers as the court making such appointment may confer, but the appointment of such receiver or other official shall not impair or in any manner prejudice the rights of Lender under the Loan Documents.

(d)      Each Loan Party hereby renounces and waives all rights susceptible to waiver under Article 9 of the UCC. Without limiting the generality of the foregoing, each Loan Party hereby (i) renounces any right to receive notice of any disposition by Lender of any Mortgaged Property upon termination of the Forbearance Period, in each case, whether such disposition is by public or private sale under the UCC, sale on a recognized market or otherwise; and (ii) waives any right relating to compulsory disposition of such Mortgaged Property.

(e)      Each Loan Party acknowledges and agrees that Lender's acceptance of any proceeds and payments as are remitted to Lender pursuant to the Loan Agreement, the other Loan Documents or this Agreement, or otherwise, shall in no way affect or impair the status of the Obligations, or be deemed to be a waiver of any Events of Default or any acquiescence therein. All payments received by or for the accounts of any Loan Party may be applied by Lender to the Obligations in such order and proportion as Lender may deem advisable in its sole discretion.

*Id*. § 12 (underlining in original).

26.      Section 14(c) of the Forbearance Agreement provided:

(c)      <u>Reliance</u>.   In entering this Agreement, each Loan Party acknowledges that such Loan Party is not relying on any statement, representation, warranty, covenant or agreement of any kind made by Lender or any employee or agent of Lender, except for the agreements of Lender set forth herein and in the Loan Documents. Any discussions and correspondence about the terms of a possible extension, modification, and/or restructuring of the Loan Documents shall be deemed to be in the nature of settlement negotiations. Accordingly, any such discussions and correspondence will not be admissible in any legal or administrative proceedings and shall not be actionable under any theory of law or utilized for any purpose without the consent of all parties. No agreement which is reached herein shall give rise to any claim or cause of action except for breach of the express provisions of a legally binding written agreement.

27.      Section 14(k) of the Forbearance Agreement provided:

(k)    <u>Representation by Counsel; Construction and Interpretation</u>. Each Loan Party acknowledges that such Loan Party: (i) has been represented, or had the opportunity to be represented, by its own legal counsel in connection with the Loan Documents and this Agreement, including, without limitation, with respect to the releases, consents and waivers set forth in Section **Error! Reference source not found.** above; (ii) that such Loan Party has exercised independent judgment with respect to the Loan Documents and this Agreement; (iii) that such Loan Party has not relied on Lender or on Lender's counsel for any advice with respect to the Loan Documents or this Agreement; and (iv) has had a reasonable opportunity to consider whether there may be future damages, injuries, claims, obligations, or liabilities which presently are unknown, unforeseen or not yet in existence and consciously intends to release them. Based upon the foregoing, no presumption or rule of contract construction or interpretation shall be employed to construe this Agreement more strictly against one party or the other.

28.    Section 14(l) of the Forbearance Agreement provided:

(l)    <u>No Fiduciary Obligations, Agency or Control of any Loan Party</u>. Nothing contained in this Agreement or any other document referred to herein, nor any action taken pursuant hereto or thereto, shall be construed as: (i) permitting or obligating Lender to act as financial or business advisor or consultant to any Loan Party; (ii) permitting or obligating Lender to control or to conduct the operations of any Loan Party; (iii) creating any fiduciary obligation on the part of Lender to any Loan Party; or (iv) causing any Loan Party to be treated as an agent of Lender.

## E.    AMENDED FORBEARANCE AGREEMENT

29.    On August 10, 2020, Plaintiff, Borrower and Guarantor executed that certain Amendment to Forbearance Agreement, Third Amendment to Loan Agreement and First Amendment to Guaranty ("Amended Forbearance Agreement").  A true and correct copy of the Amended Forbearance Agreement is attached hereto as **<u>Exhibit 7</u>** and incorporated herein by reference.

30.    Section 4 of the Amended Forbearance Agreement provided:

4.    <u>Affirmation, Further References</u>. The Lender and each Loan Party acknowledge and affirm that the Forbearance Agreement, as hereby amended, is hereby ratified and confirmed in all respects and all terms, conditions and provisions of the Forbearance Agreement (except as amended by this Amendment) and of each of the other Loan Documents shall remain unmodified and in full force and effect. All references in any document or instrument to the Forbearance Agreement are hereby amended and shall refer to the Forbearance Agreement as amended by this Amendment.

31.    Section 7 of the Amended Forbearance Agreement provided:

7.    <u>Costs and Expenses</u>. Each Loan Party jointly and severally agrees to reimburse the Lender, upon execution of this Amendment, for all reasonable out-of-pocket expenses (including attorneys' fees and legal expenses of counsel for the Lender) incurred in connection with the Loan Documents, including in connection with the negotiation, preparation and execution of this Amendment and all other documents negotiated, prepared and executed in connection with this Amendment, and in enforcing the obligations of any Loan Party under this Amendment, and to pay and save the Lender harmless from all liability for, any stamp or other taxes which may be payable with respect to the execution or delivery of this Amendment.

32.    Section 10 of the Amended Forbearance Agreement provided:

10.    <u>Release of Rights and Claims</u>.  Each Loan Party, for such Loan Party and such Loan Party's successors and assigns, hereby releases, acquits, and forever discharges Lender and its successors and assigns for any and all manner of actions, suits, claims, charges, judgments, levies and executions occurring or arising from the transactions entered into with Lender prior to entering into this Amendment whether known or unknown, liquidated or unliquidated, fixed or contingent, direct or indirect which such Loan Party may have against Lender.

33.    Section 12 of the Amended Forbearance Agreement provided:

12.    <u>Existing Defaults; No Waiver</u>.  Nothing contained in this Amendment (or in any other agreement or understanding) shall constitute a waiver of, or shall otherwise diminish or impair, any of the rights or remedies available to the Lender under the Loan Agreement, Forbearance Agreement or any of the other Loan Documents or under applicable law (subject to Section 3 of the Forbearance Agreement), it being expressly understood and agreed that all such rights and remedies are retained by, and are reserved unto, the Lender. Without limiting the generality of the foregoing, the Loan

Parties are expressly notified that the Lender has not waived any of the Existing Defaults.

34.    Section 13 of the Amended Forbearance Agreement contained the following acknowledgement of Guarantor:

> 13.    Acknowledgement of Guarantor.  The Guarantor agrees and acknowledges that this Amendment shall in no way impair or limit the rights of the Lender under the Guaranty or any other Loan Document to which the Guarantor is a party, and confirms that by his Guaranty the Guarantor continues to unconditionally guarantee the prompt payment and full performance of all of the debts, liabilities and obligations of the Borrower to the Lender, including without limitation the Obligations. The acknowledgment in this Section 13 shall not be construed, by implication or otherwise, as imposing any requirement that Lender notify or seek the consent of the Guarantor relative to any past or future extension of credit to the Borrower, or modification, extension or other action with respect thereto, in order for any such extension of credit or modification, extension or other action with respect thereto to be subject to the Guaranty, it being expressly acknowledged and reaffirmed that the Guarantor has under the Guaranty consented to modifications, extensions and other actions with respect thereto without any notice thereof

## F.    AMENDED AND RESTATED FORBEARANCE AGREEMENT

35.    On September 30, 2020, Plaintiff, Borrower and Guarantor executed that certain Amended and Restated Forbearance Agreement and Fourth Amendment to Loan Agreement ("Amended and Restated Forbearance Agreement").  A true and correct copy of the Amended and Restated Forbearance Agreement is attached hereto as **Exhibit 8** and incorporated herein by reference.

36.    In addition to the "Existing Defaults" identified in the Forbearance Agreement, Recital G of the Amended and Restated Forbearance Agreement noted two additional defaults as follows:

G.    New Defaults. After sending the April 2020 Default Letter, the Lender became aware of the following additional Events of Default (collectively, the "New Defaults", and together with the Specified Defaults, the "Existing Defaults"):

\* \* \*

8.    12/31/19 Audited Balance Sheet. The Borrower failed to furnish to the Lender, prior to August 31, 2020, the company-prepared balance sheet of the Borrower for the 2019 fiscal year, prepared in conformity with GAAP and audited by the Accountants, as required pursuant to Section 7(e) of the Original Forbearance Agreement.  Such noncompliance constitutes a Forbearance Default under Section 4(c) of the Original Forbearance Agreement and an Event of Default under Section 7.1(m) of the Loan Agreement and Section 7 of the Original Forbearance Agreement.

9.    Closure of U.S. Bank Account. The Borrower failed to close, prior to August 31, 2020, that certain deposit account no. 104774649107 titled in the name of the Borrower and maintained with U.S. Bank National Association, as required pursuant to Section 6(h) of the Original Forbearance Agreement and Section 5.14(a) of the Loan Agreement.  Such noncompliance constitutes a Forbearance Default under Section 4(c) of the Original Forbearance Agreement and an Event of Default under Sections 7.1(c) and (m) of the Loan Agreement.

37.    Sections 1, 5(f), 5(g), 5(j), 10, 12, 14(c), 14(k) and 14(l) of the Amended and Restated Forbearance Agreement contained provisions that were substantially similar, if not identical, to the same numbered sections of the Forbearance Agreement.

38.    Section 18 of the Amended and Restated Forbearance Agreement provided:

18.    Restatement of Original Forbearance Agreement.  The parties acknowledge and agree that this Agreement amends, modifies and restates the Original Forbearance Agreement; provided that the execution and delivery of this Agreement (i) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Original Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (ii) does not impact any of the Amendments to the Guaranty made pursuant to Section 9 of the Original Forbearance Agreement, (iii) does not constitute a novation and (iv) does not constitute a waiver or release of

any rights, claims or remedies of Lender under the Original Forbearance Agreement, or any other Loan Document.

**G.   SECOND AMENDED AND RESTATED FORBEARANCE AGREEMENT**

39.   On December 31, 2020, Plaintiff, Borrower and Guarantor executed that certain Second Amended and Restated Forbearance Agreement, Amendment No. 5 to Loan Agreement and Amendment No. 1 to Subordination Agreement ("Second Amended and Restated Forbearance Agreement").  A true and correct copy of the Second Amended and Restated Forbearance Agreement is attached hereto as **Exhibit 9** and incorporated herein by reference.

40.   Sections 1, 5(f), 5(g), 5(j), 10, 12, 14(c), 14(k) and 14(l) of the Second Amended and Restated Forbearance Agreement contained provisions that were substantially similar, if not identical, to the same numbered sections of the Forbearance Agreement and Amended and Restated Forbearance Agreement.

41.   Section 18 of the Second Amended and Restated Forbearance Agreement provided:

> 18.   <u>Restatement of Amended and Restated Forbearance Agreement</u>. The parties acknowledge and agree that this Agreement amends, modifies and restates the Amended and Restated Forbearance Agreement; <u>provided</u> <u>that</u> the execution and delivery of this Agreement (i) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Original Forbearance Agreement, except to the extent the same provisions were amended by the Amended and Restated Forbearance Agreement or are amended by this Agreement, (ii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (iii) does not impact any of the Amendments to the Guaranty made pursuant to Section 9 of the Original Forbearance Agreement, (iv) does not constitute a novation and (v) does not constitute a waiver or release of any rights, claims or remedies of Lender

under the Original Forbearance Agreement, the Amended and Restated Forbearance Agreement, or any other Loan Document.

## H.    THIRD AMENDED AND RESTATED FORBEARANCE AGREEMENT

42.    On June 30, 2021, Plaintiff, Borrower and Guarantor executed that certain Third Amended and Restated Forbearance Agreement, Amendment No. 6 to Loan Agreement and Amendment No. 2 to Subordination Agreement ("Third Amended and Restated Forbearance Agreement").  A true and correct copy of the Third Amended and Restated Forbearance Agreement is attached hereto as **Exhibit 10** and incorporated herein by reference.

43.    Sections 1, 5(f), 5(g), 5(j), 10, 12, 14(c), 14(k) and 14(l) of the Third Amended and Restated Forbearance Agreement contained provisions that were substantially similar, if not identical, to the same numbered sections of the Forbearance Agreement, Amended and Restated Forbearance Agreement, and Second Amended and Restated Forbearance Agreement.

44.    Section 18 of the Third Amended and Restated Forbearance Agreement provided:

18.    Restatement of Second Amended and Restated Forbearance Agreement. The parties acknowledge and agree that this Agreement amends, modifies and restates the Amended and Restated Forbearance Agreement; provided that the execution and delivery of this Agreement (i) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Original Forbearance Agreement, except to the extent the same provisions were amended by the Amended and Restated Forbearance Agreement or the Second Amended and Restated Forbearance Agreement, or are amended by this Agreement, (ii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Second Amended and Restated

Forbearance Agreement or are amended by this Agreement, (iii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (iv) does not impact any of the Amendments to the Guaranty made pursuant to Section 9 of the Original Forbearance Agreement, (v) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement (vi) does not constitute a novation and (vii) does not constitute a waiver or release of any rights, claims or remedies of Lender under the Original Forbearance Agreement, the Amended and Restated Forbearance Agreement, or any other Loan Document.

## I.    FOURTH AMENDED AND RESTATED FORBEARANCE AGREEMENT

45.    On December 31, 2021, Plaintiff, Borrower and Guarantor executed that certain Fourth Amended and Restated Forbearance Agreement, Amendment No. 7 to Loan Agreement and Amendment No. 3 to Subordination Agreement ("Fourth Amended and Restated Forbearance Agreement").  A true and correct copy of the Fourth Amended and Restated Forbearance Agreement is attached hereto as **Exhibit 11** and incorporated herein by reference.

46.    In addition to the "Existing Defaults" identified in the Third Amended and Restated Forbearance Agreement, Recital G of the Fourth Amended and Restated Forbearance Agreement noted two additional defaults as follows:

G.    New Defaults. After sending the April 2020 Default Letter, the Lender became aware of the following additional Events of Default (collectively, the "New Defaults", and together with the Specified Defaults, the "Existing Defaults"):

* * *

10.    Going Concern Qualification.  Pursuant to Section 5.1(a)(i) of the Loan Agreement, the Borrower is required to, among other things, furnish to the Lender, within 90 days after the end of

each fiscal year of the Borrower, the annual audited financial statements referred to in such Section, certified without qualification by independent certified public accountants of recognized standing selected by the Borrower and acceptable to the Lender. The annual audited financial statements for the 2020 fiscal year of the Borrower included a going concern qualification. Such instance of non-compliance constitutes an Event of Default under Sections 7.1(c) and (n) of the Loan Agreement.

11.    Forecasted Payment Schedule Updates. The Borrower failed to deliver the "rolling" updates to the Forecasted Payment Schedule (as defined in the Third Amended and Restated Forbearance Agreement) during certain periods beginning on August 12, 2021 through and including December 14, 2021, as required pursuant to Section 7(a) of the Third Amended and Restated Forbearance Agreement. Each such instance of noncompliance constitutes a Forbearance Default under Section 4(c) of the Third Amended and Restated Forbearance Agreement and an Event of Default under Section 7.1(m) of the Loan Agreement.

47.    Sections 1, 5(f), 5(g), 5(j), 10, 12, 14(c), 14(k) and 14(l) of the Fourth Amended and Restated Forbearance Agreement contained provisions that were substantially similar, if not identical, to the same numbered sections of the Forbearance Agreement, Amended and Restated Forbearance Agreement, Second Amended and Restated Forbearance Agreement, and Third Amended and Restated Forbearance Agreement.

48.    Section 18 of the Fourth Amended and Restated Forbearance Agreement provided:

18.    Restatement of Third Amended and Restated Forbearance Agreement. The parties acknowledge and agree that this Agreement amends, modifies and restates the Amended and Restated Forbearance Agreement; provided that the execution and delivery of this Agreement (i) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Original Forbearance Agreement, except to the extent the same provisions were amended by the Amended and Restated Forbearance

Agreement, the Second Amended and Restated Forbearance Agreement or the Third Amended and Restated Forbearance Agreement, or are amended by this Agreement, (ii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Second Amended and Restated Forbearance Agreement or the Third Amended and Restated Forbearance Agreement, or are amended by this Agreement, (iii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Third Amended and Restated Forbearance Agreement, or are amended by this Agreement, (iv) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Third Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (v) does not impact any of the Amendments to the Guaranty made pursuant to Section 9 of the Original Forbearance Agreement, (vi) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Third Amended and Restated Forbearance Agreement, or are amended by this Agreement, (vii) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Third Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (viii) does not constitute a novation and (ix) does not constitute a waiver or release of any rights, claims or remedies of Lender under the Original Forbearance Agreement, the Amended and Restated Forbearance Agreement, or any other Loan Document.

## J.    FIFTH AMENDED AND RESTATED FORBEARANCE AGREEMENT

49.    On June 29, 2022, Plaintiff, Borrower and Guarantor executed that certain Fifth Amended and Restated Forbearance Agreement, Amendment No. 8 to Loan Agreement and Amendment No. 4 to Subordination Agreement ("Fifth Amended and Restated Forbearance Agreement").  A true and correct copy of the Fifth Amended and Restated Forbearance Agreement is attached hereto as **Exhibit 12** and incorporated herein by reference.

50.     Sections 1, 5(f), 5(g), 5(j), 10, 12, 14(c), 14(k) and 14(l) of the Fifth Amended and Restated Forbearance Agreement contained provisions that were substantially similar, if not identical, to the same numbered sections of the Forbearance Agreement, Amended and Restated Forbearance Agreement, Second Amended and Restated Forbearance Agreement, Third Amended and Restated Forbearance Agreement, and Fourth Amended and Restated Forbearance Agreement.

51.     Section 18 of the Fifth Amended and Restated Forbearance Agreement provided:

> 18.     Restatement of Fourth Amended and Restated Forbearance Agreement. The parties acknowledge and agree that this Agreement amends, modifies and restates the Amended and Restated Forbearance Agreement; provided that the execution and delivery of this Agreement (i) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Original Forbearance Agreement, except to the extent the same provisions were amended by the Amended and Restated Forbearance Agreement, the Second Amended and Restated Forbearance Agreement, the Third Amended and Restated Forbearance Agreement or the Fourth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (ii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Second Amended and Restated Forbearance Agreement, the Third Amended and Restated Forbearance Agreement or the Fourth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (iii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Third Amended and Restated Forbearance Agreement or the Fourth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (iv) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Third Amended and Restated Forbearance Agreement or the Fourth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (v) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Fourth Amended and Restated

Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (vi) does not impact any of the Amendments to the Guaranty made pursuant to Section 9 of the Original Forbearance Agreement, (vii) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Third Amended and Restated Forbearance Agreement or the Fourth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (viii) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Third Amended and Restated Forbearance Agreement or the Fourth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (ix) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Fourth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (x) does not constitute a novation and (xi) does not constitute a waiver or release of any rights, claims or remedies of Lender under the Original Forbearance Agreement, the Amended and Restated Forbearance Agreement, or any other Loan Document.

## K.   SIXTH AMENDED AND RESTATED FORBEARANCE AGREEMENT

52.   On September 30, 2022, Plaintiff, Borrower and Guarantor executed that certain Sixth Amended and Restated Forbearance Agreement, Amendment No. 9 to Loan Agreement and Amendment No. 5 to Subordination Agreement ("Sixth Amended and Restated Forbearance Agreement").  A true and correct copy of the Sixth Amended and Restated Forbearance Agreement is attached hereto as **Exhibit 13** and incorporated herein by reference.

53.   In addition to the "Existing Defaults" identified in the Fourth Amended and Restated Forbearance Agreement, Recital G of the Sixth Amended and Restated Forbearance Agreement noted three additional defaults as follows:

G.   New Defaults. After sending the April 2020 Default Letter, the Lender became aware of the following additional Events of Default

(collectively, the "New Defaults", and together with the Specified Defaults, the "Existing Defaults"):

* * *

12. Replacement Reserve Deposits. The Borrower failed to timely make the monthly deposits to the Replacement Reserve as required under Section 5.19 of the Loan Agreement, during the period beginning on January 22, 2022 through July 26, 2022. Such non-compliance constitutes an Event of Default under Section 7.1(c) of the Loan Agreement.

13. June 2022 Guarantor Financial Statements. The Borrower failed to cause the Guarantor to deliver the Guarantor's bank statements, account statements, balance sheets and other evidence requested by Lender in order to substantiate the Unencumbered Liquid Assets of the Guarantor, within 45 days after the end of the calendar quarter ending on June 30, 2022, as required under Section 5.1(b) of the Loan Agreement. Such non-compliance constitutes an Event of Default under Section 7.1(c) of the Loan Agreement.

14. Franchise Agreement. In the monthly financial statements required to be delivered by the Borrower pursuant to Section 5.1(c) of the Loan Agreement for the month of July 2022, the Borrower indicated for the first time a line item for accounts payable to Franchisor in the aggregate amount of 219,717.45, for invoices dating back to October 31, 2020. The Borrower certified, (a) pursuant to Section 5(a) of each Prior Forbearance Agreement, that the representations and warranties set forth in the Loan Agreement were true and correct at the time of such Prior Forbearance Agreement, including without limitation the representations and warranties set forth in (i) Section 4.6 of the Loan Agreement, which stated among other things that the Borrower had not incurred any material obligation or contingent liability which is not reflected in such financial statements and (ii) Section 4.19 of the Loan Agreement, which stated among other things that (A) all franchise or license fees due to the Franchisor have been paid in full, and (B) there is no existing default by Borrower under the Franchise Agreement, and (b) pursuant to certifications accompanying each financial statement delivered pursuant to Sections 5.1(a) and (c) of the Loan Agreement and Section 7(e) of certain Prior Forbearance Agreements, that, among other certifications, (i) such financial statements present fairly the financial condition of the Borrower, (ii) no previously deferred franchise or license fees due to the Franchisor under the Franchise

Agreement are delinquent under the Hilton Payment Agreement (as defined in the Amended and Restated Forbearance Agreement), (iii) all other franchise or license fees due to the Franchisor under the Franchise Agreement have been paid in full, (iv) Franchisor has not made any requests or demands for any deferred or delinquent franchise or license fees, and (v) there is no existing default by Borrower under the Franchise Agreement. Each such materially misleading representation, warranty and certification constitutes an Event of Default under <u>Section 7.1(b)</u> of the Loan Agreement.

54.    Sections 1, 5(f), 5(g), 5(j), 10, 12, 14(c), 14(k) and 14(l) of the Sixth Amended and Restated Forbearance Agreement contained provisions that were substantially similar, if not identical, to the same numbered sections of the Forbearance Agreement, Amended and Restated Forbearance Agreement, Second Amended and Restated Forbearance Agreement, Third Amended and Restated Forbearance Agreement, Fourth Amended and Restated Forbearance Agreement, and Fifth Amended and Restated Forbearance Agreement.

55.    Section 18 of the Sixth Amended and Restated Forbearance Agreement provided:

18.    <u>Restatement of Fifth Amended and Restated Forbearance Agreement</u>. The parties acknowledge and agree that this Agreement amends, modifies and restates the Amended and Restated Forbearance Agreement; <u>provided that</u> the execution and delivery of this Agreement (i) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Original Forbearance Agreement, except to the extent the same provisions were amended by the Amended and Restated Forbearance Agreement, the Second Amended and Restated Forbearance Agreement, the Third Amended and Restated Forbearance Agreement, the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (ii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Second Amended and Restated Forbearance Agreement, the Third Amended and Restated

Forbearance Agreement, the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (iii) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Third Amended and Restated Forbearance Agreement, the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (iv) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Third Amended and Restated Forbearance Agreement, the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (v) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (vi) does not impact any of the Amendments to the Loan Agreement made pursuant to Section 8 of the Fifth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (vii) does not impact any of the Amendments to the Guaranty made pursuant to Section 9 of the Original Forbearance Agreement, (viii) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Second Amended and Restated Forbearance Agreement, except to the extent the same provisions were amended by the Third Amended and Restated Forbearance Agreement, the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, or are amended by this Agreement, (ix) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Third Amended and Restated Forbearance Agreement, the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (x) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Fourth Amended and Restated Forbearance Agreement or the Fifth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (xi) does not impact any of the Amendments to the NHI Subordination Agreement made pursuant to Section 9 of the Fifth Amended and Restated Forbearance Agreement, except to the extent the same provisions are amended by this Agreement, (xii) does not constitute a novation and (xiii) does not constitute a waiver or release of any rights,

claims or remedies of Lender under any Prior Forbearance Agreement, or any other Loan Document.

## L.    AMENDMENT NO. 10 TO LOAN AGREEMENT

56.    On December 20, 2022, Plaintiff and Borrower executed that certain Amendment No. 10 to Loan Agreement and Waiver ("Amendment No. 10").  A true and correct copy of the Amendment No. 10 is attached hereto as **Exhibit 14** and incorporated herein by reference.

57.    Section 4(l) of Amendment No. 10 amended the Loan Agreement as follows:

(l)    Financial Covenants.    Sections 6.12 and 6.13 of the Loan Agreement is hereby amended and restated in its entirety to read as follows:

"Section 6.12 Debt Service Coverage Before Distributions Ratio. Commencing with the fiscal quarter ending on March 31, 2025, the Borrower shall not permit its Debt Service Coverage Before Distributions Ratio to be less than 1.20 to 1.00 as of the last day of any fiscal quarter, determined for the Financial Covenant Applicable Period ending on such last day of such fiscal quarter.

Section 6.13  Minimum Modified EBITDA.  As of the last day of each fiscal quarter of Borrower set forth below, Borrower shall not permit Modified EBITDA to be less than the corresponding amount set forth opposite such period below:

| Periods Ending | Modified EBITDA shall not be less than: |
|---|---|
| Financial Covenant Applicable Period ending June 30, 2023 | $608,341 |
| Financial Covenant Applicable Period ending September 30, 2023 | $1,126,590 |
| Financial Covenant Applicable Period ending December 31, 2023 | $1,383,409 |
| Financial Covenant Applicable Period ending March 31, 2024 | $1,520,514 |
| Financial Covenant Applicable Period ending June 30, 2024 | $1,703,076 |

| Periods Ending | Modified EBITDA shall not be less than: |
|---|---|
| Financial Covenant Applicable Period ending September 30, 2024 | $1,926,127 |
| Financial Covenant Applicable Period ending December 31, 2024 | $2,114,118 |

Ex. 14 § 4(l) (underlining in original).

58.     In  connection  with  Amendment  No.  10,  Guarantor  executed  an

Acknowledgement of Guarantor that provided as follows:

> Pursuant to the terms of a certain Guaranty dated January 17, 2019 (the
> "Guaranty"), executed by the undersigned in favor of BELL BANK, a North
> Dakota  banking  corporation  (the  "Lender"),  the  undersigned  has
> unconditionally guaranteed the prompt payment and full performance of all
> of the debts, liabilities and obligations of NATH ROSEVILLE MIDWEST
> LODGING, LLC, a Minnesota limited liability company (the "Borrower") to
> the  Lender,  which  debts,  liabilities  and  obligations  include,  without
> limitation,  the  obligations  of  the  Borrower  under  that  certain  Loan
> Agreement dated as of January 17, 2019 by and between the Borrower and
> the Lender (as previously amended, and as the same may be hereafter further
> amended  from  time  to  time,  the  "Loan Agreement").   The  undersigned
> acknowledges receipt of a copy of the proposed Amendment No. 10 to Loan
> Agreement and Waiver dated on or about the date hereof (the "Amendment").
> ***The undersigned agrees and acknowledges that the Amendment shall in***
> ***no way impair or limit the rights of the Lender under the Guaranty or any***
> ***other Loan Document (as such term is defined in the Loan Agreement) to***
> ***which the undersigned is a party, and confirms that by its Guaranty the***
> ***undersigned continues to unconditionally guarantee the prompt payment***
> ***and full performance of all of the debts, liabilities and obligations of the***
> ***Borrower to the Lender, including without limitation obligations under the***
> ***Loan Agreement as amended pursuant to the Amendment.  In addition, the***
> ***undersigned  represents  that  no  events  have  taken  place  and  no***
> ***circumstances exist at the date hereof which would give the undersigned***
> ***grounds to assert a defense, offset or counterclaim to the obligations of the***
> ***undersigned under the Guaranty*** or any of the other Loan Documents to
> which the undersigned is a party and there are no known claims, causes of
> action, suits, debts, liens, obligations, liabilities, demands, losses, costs and
> expenses (including attorneys' fees) of any kind, character or nature
> whatsoever, fixed or contingent, which the undersigned may have or claim

to have against the Lender, which might arise out of or be connected with any act of commission or omission of the Lender existing or occurring on or prior to the date of the Amendment, including, without limitation, any claims, liabilities or obligations arising with respect to the Guaranty or indebtedness evidenced by the Note (as defined in the Loan Agreement). ***In consideration of the mutual covenants and conditions set forth above and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby joins in the release of rights and claims set forth in <u>Section 12</u> of the Amendment. The undersigned hereby confirms that the Guaranty and all other Loan Documents to which the undersigned is a party remain in full force and effect, enforceable against the undersigned in accordance with their terms***.

This Acknowledgment shall not be construed, by implication or otherwise, as imposing any requirement that Lender notify or seek the consent of the undersigned relative to any past or future extension of credit, or modification, extension or other action with respect thereto, in order for any such extension of credit or modification, extension or other action with respect thereto to be subject to the Guaranty, it being expressly acknowledged and reaffirmed that the undersigned has under the Guaranty consented to modifications, extensions and other actions with respect thereto without any notice thereof.

Ex. 14 at 19 (underlining in original; bold with italics added).

## M.    DEFAULT AND ACCELERATION OF THE LOAN

59.    Events of default have occurred under the Loan Documents, which are continuing and uncured.

60.    On April 29, 2025, Lender provided Borrower with a written notice of default ("April Default Notice").  A true and correct copy of the April Default Notice is attached as **Exhibit 15** and incorporated herein by reference.  Specifically, the April Default Notice notified Borrower as follows:

Pursuant to Section 6.12 of the Loan Agreement, the Borrower is prohibited from permitting its Debt Service Coverage Before Distributions Ratio to be less than 1.20 to 1.00 as of the last day of any fiscal quarter, determined for the Financial Covenant Applicable Period ending on such last day of such fiscal quarter. The Borrower has informed the Lender that its Debt Service

Coverage Before Distributions Ratio was less than 1.20 to 1.00 as of March 31, 2025 for the Financial Covenant Applicable Period then ended. Such non-compliance with the Loan Agreement constitutes an Event of Default under Section 7.1(c) of the Loan Agreement (the "Existing Default").

The Borrower is hereby advised that, by reason of the occurrence and continuance of the Existing Default, the Lender may, at its option, (a) pursuant to Section 2.7 of the Loan Agreement, increase the interest rate provided for in the Loan Agreement to the Default Rate, which Default Rate, if imposed, may be effective as soon as the date of the occurrence of the Existing Default, (b) declare the Obligations to be forthwith due and payable, whereupon the same shall immediately become due and payable, and/or (c) exercise any or all of the other rights and remedies available to the Lender under the Loan Agreement or any of the other Loan Documents, or under applicable law.

Notwithstanding the Lender's right to impose the Default Rate effective as of March 31, 2025, the Lender has elected to impose the Default Rate effective as of the date of this letter.

Although entitled to do so as a result of the Existing Default, the Lender has elected to not immediately exercise any of its rights and remedies under the Loan Agreement, the other Loan Documents or under applicable law, except as set forth herein. The election of the Lender to not immediately exercise all rights and remedies it may have with regard to the Existing Default shall not be deemed a waiver thereof, and shall not prevent the Lender from exercising them at its discretion hereafter. Nothing contained in this letter (or in any other agreement or understanding) shall constitute a waiver of, or shall otherwise diminish or impair, any of the rights or remedies available to the Lender under the Loan Agreement or any of the other Loan Documents, or under applicable law, it being expressly understood and agreed that all such rights and remedies are retained by, and are reserved unto, the Lender. Nothing contained in this letter (or in any other agreement or understanding) shall be construed as a waiver by the Lender of the Borrower's compliance with any covenant or other provision set forth in the Loan Agreement or any other Loan Document, nor does the Lender hereby consent to any such noncompliance by the Borrower for any period. Without limiting the generality of the foregoing, the Borrower is expressly notified that the Lender has not waived the Existing Default.

Ex. 15 at 1-2.

61.    On June 4, 2025, Lender provided Borrower and Guarantor with written notice that, by reason of the occurrence and continuance of the "Existing Default," the entire outstanding amount of the Loan was accelerated and immediately due and owing ("June Demand Letter").  A true and correct copy of the June Demand Letter is attached as **Exhibit 16** and incorporated herein by reference.  Specifically, the June Demand Letter notified Borrower and Guarantor, in relevant part, as follows:

> By reason of the occurrence and continuance of the Existing Default, the Borrower and Guarantor are each hereby notified that:
>
> (a)    Pursuant to Section 7.2(b) of the Loan Agreement, the Lender hereby accelerates the entire amount of the Obligations of the Borrower and Guarantors owing to the Lender under the Loan Agreement, the Guaranty and the other Loan Documents. Pursuant to Section 7.2(b) of the Loan Agreement and Section 5.1(b) of the Guaranty, the Lender hereby demands payment in full of the entire amount of such Obligations. As of June 4, 2025, the aggregate outstanding balance of the Note is $20,031,784.20, which includes principal and interest through June 4, 2025, but does not include interest accruing after June 4, 2025 or any fees, costs, expenses and other amounts owing by the Borrowers and Guarantor under the Loan Documents;
>
> (b)    The Default Rate imposed by the Lender in connection with the Notice of Default shall remain in effect for the entire amount of Obligations accelerated and demanded herein; and
>
> (c)    If payment in full of the Obligations is not received by Lender in immediately available funds by 5:00 PM (central time) on June 13, 2025, the Lender intends to exercise its rights under the Loan Documents and applicable law, which may include (i) commencing a lawsuit to enforce the Guaranty, (ii) seeking the appointment of a receiver under the Loan Documents and Minnesota law to take control of the Mortgaged Property and/or (iii) commencing a foreclosure action under Minnesota law to foreclose its Lien on the Mortgaged Property.

Ex. 16 at 1-2.

62.    Borrower and Guarantor failed to timely pay in full the "Obligations" identified in the June Demand Letter.

63.     On November 18, 2025, Lender provided Borrower and Guarantor with another written notice that, by reason of the failure of Borrower and Guarantor to pay in full the Obligations identified in the June Demand Letter and the existence of new and additional defaults, the entire outstanding amount of the Loan was accelerated and immediately due and owing ("November Demand Letter").  A true and correct copy of the November Demand Letter is attached as **<u>Exhibit 17</u>** and incorporated herein by reference. Specifically, the November Demand Letter notified Borrower and Guarantor, in relevant part, as follows:

> By reason of the occurrence and continuance of the Existing Defaults, the Borrower and Guarantor are each hereby notified that:
>
> (a)     Pursuant to Section 7.2(b) of the Loan Agreement, the Lender hereby accelerates the entire amount of the obligations of the Borrower and Guarantors owing to the Lender under the Loan Agreement, the Guaranty and the other Loan Documents. Pursuant to Section 7.2(b) of the Loan Agreement and Section 5.1(b) of the Guaranty, the Lender hereby demands payment in full of the entire amount of such Obligations.  As of November 17, 2025, the aggregate outstanding balance of the Note is $20,351,347.58, which includes principal and interest through November 17, 2025, but does not include interest accruing after November 17, 2025 or any fees, costs, expenses and other amounts owing by the Borrowers and Guarantor under the Loan Documents;
>
> (b)     The Default Rate imposed by the Lender in connection with the April 2025 Notice of Default shall remain in effect for the entire amount of Obligations accelerated and demanded herein; and
>
> (c)     If payment in full of the Obligations is not received by Lender in immediately available funds by 5:00 PM (central time) on November 25, 2025,the Lender intends to exercise its rights under the Loan Documents and applicable law, which may include (i) commencing a lawsuit to enforce the Guaranty, (ii) seeking the appointment of a receiver under the Loan Documents and Minnesota law to take control of the Mortgaged Property and/or (iii) commencing a foreclosure action under Minnesota law to foreclose its Lien on the Mortgaged Property.

CASE 0:25-cv-04479-ECT-DLM    Doc. 1    Filed 11/26/25    Page 38 of 44

Ex. 17 at 2-3.

## N.    THE RELEVANT GUARANTY PROVISIONS

64.    The Guaranty (Ex. 3), as amended by the Forbearance Agreement, the
Amended Forbearance Agreement, the Amended and Restated Forbearance Agreement,
the Second Amended and Restated Forbearance Agreement, the Third Amended and
Restated Forbearance Agreement, the Fourth Amended and Restated Forbearance
Agreement, the Fifth Amended and Restated Forbearance Agreement, and the Sixth
Amended and Restated Forbearance Agreement (Exs. 6-13), will be referred to herein as
the "Guaranty."

65.    Section 1.1 of the Guaranty provides, in relevant part, as follows:

[T]he Guarantor hereby absolutely and unconditionally guarantees to the
Lender: (a) the full and prompt payment when due of the principal of, all
interest on, and all fees in respect of, all of the Loans, and (b) the full and
prompt payment and performance of any and all other Obligations (as
defined in the Loan Agreement), whether all or any portion of such Loans
and other Obligations are now or hereafter existing, direct or indirect, related
or unrelated, joint or several, or absolute or contingent, whether or not for
the payment of money, and whether arising by reason of an extension of
credit, opening of a letter of credit, loan or guarantee or in any other manner
(all of the indebtedness, liabilities and obligations described in the foregoing
clauses (a) and (b) of this Section 1.1 which are outstanding from time to
time being hereinafter collectively referred to as the "Guaranteed
Obligations"). The Guarantor hereby absolutely and unconditionally
guarantees to the Lender the full and prompt payment and performance of
the Guaranteed Obligations when the Guaranteed Obligations are due under
the terms of the Loan Agreement or the other Loan Documents (as defined
in the Loan Agreement), including, without limitation, on the occurrence of
a Default or an Event of Default (each as defined in the Loan Agreement),
by reason of the maturity or acceleration of any of the Guaranteed
Obligations, on the occurrence and continuance of a default under the terms
of this Guaranty, or otherwise, and at any times after the date when due. The
Guarantor further agrees that the Guaranteed Obligations may be extended
or renewed in whole or in part without notice to or further assent from him,

and that the Guarantor remains bound upon his guarantee notwithstanding any such extension or renewal.

66.     Section 2.1 of the Guaranty provides that the Guarantor's obligations are absolute, unconditional, and will be continuing and remain in full force and effect (subject to the provisions of Sections 2.2 and 2.6, which are inapplicable).  Section 2.1 further provides that the Guaranty is a continuing guaranty of payment and not of collection and Guarantor's obligations will not be released, discharged, affected, modified or impaired by any event.

67.     Section 2.3 of the Guaranty contains the following waivers by Guarantor:

The Guarantor hereby covenants that this Guaranty will not be discharged except by complete performance of the obligations contained in this Guaranty. The Guarantor waives all setoffs and counterclaims and all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of, and reliance on, this Guaranty. The Guarantor further waives all defenses available to a surety, guarantor, or accommodation co-obligor other than the full payment of the Guaranteed Obligations, including (a) notices of the existence, creation or incurring of new or additional Indebtedness arising either from additional loans extended to the Borrower or otherwise, (b) notices that the principal amount, or any portion thereof (and any interest thereon), of the Loans or any of the other Guaranteed Obligations is due, (c) notices of any and all proceedings to collect from the Borrower, any indorser or any other guarantor of all or any part of the Guaranteed Obligations, or from anyone else, (d) to the extent permitted by law, notices of exchange, sale, surrender or other handling of any security or collateral given to the Lender to secure payment of all or any part of the Guaranteed Obligations, and (e) defenses based on suretyship, including impairment of collateral and alteration of underlying debt.

68.     In Article 3 of the Guaranty, Guarantor made the following representations:

(a) this Guaranty is the legal, valid and binding obligation of the Guarantor, enforceable in accordance with its terms; (b) the execution, delivery, and performance of this Guaranty does not and will not, by the lapse of time, by the giving of notice, or the satisfaction of any other condition (i) violate or

contravene any authority having the force of law applicable to the Guarantor or any of his properties or any agreement or other instrument to which the Guarantor is a party or by which the Guarantor or any of his properties is or may be bound, or (ii) result in the creation or imposition of any Lien on any of the properties of the Guarantor; (c) the execution and delivery of this Guaranty by the Guarantor does not require any consent or approval of any Person; (d) there is no action or proceeding pending before any court or Governmental Authority which materially, adversely affects the condition (financial or otherwise) of the Guarantor or any of his properties; (e) the Guarantor has disclosed to the Lender in all material respects all of the Guarantor's personal assets and liabilities as of the date of this Guaranty; and (f) the Guarantor has not guaranteed any Indebtedness of the Borrower other than the Guaranteed Obligations.

69.    Section 4.4 of the Guaranty provides:

The Guarantor will pay all of the reasonable costs, expenses and fees, including, without limitation, all reasonable attorneys' fees, incurred by the Lender in enforcing or attempting to enforce this Guaranty following any default on the part of the Guarantor, whether the same is enforced by suit or otherwise, and all amounts recoverable by law, including, without limitation, interest on any unpaid amounts due under this Guaranty.

70.    Section 5.1 of the Guaranty provides:

At any time after all or any portion of the Guaranteed Obligations are due and payable, whether on maturity, after the acceleration of any of the Guaranteed Obligations, on the occurrence of a Default or an Event of Default, on the occurrence of any default under this Guaranty, or otherwise: (a) the Lender will have the right: (i) to proceed directly against the Guarantor under this Guaranty without first exhausting any other remedy it may have and without resorting to any security or guaranty held by the Lender, and (ii) to compromise, settle, release, discharge or terminate any of the obligations of any other guarantor(s) of the Guaranteed Obligations as the Lender, in its discretion, determines without thereby in any way affecting, limiting or diminishing its rights thereafter to enforce the obligations of the Guarantor under this Guaranty; (b) the Guarantor will, on the demand of the Lender, immediately deposit with the Lender in U.S. dollars the total amount of the Guaranteed Obligations; (c) the Lender will have the right to sell, collect, or otherwise dispose of and to apply the proceeds of any collateral or other security given to the Lender with respect to the Guaranteed Obligations in satisfaction of the Guaranteed Obligations; and (d) the Lender will have the right to exercise all of the Lender's other powers, rights and remedies

under this Guaranty, the Loan Documents and under applicable law. The Lender will not have any obligation to marshal any assets in favor of the Guarantor or against or in payment of any or all of the Guaranteed Obligations.

71.     Section 6.1 of the Guaranty provides that remedies provided in the Guaranty are cumulative and not exclusive of any remedies provided by law and the exercise of one or more remedies by the Lender does not require that all or any other remedies be exercised and does not preclude later exercise of the same remedy.

72.     Section 6.2 of the Guaranty addresses Lender waivers and amendments and provides:

> Failure by the Lender to exercise any right, remedy or option under this Guaranty or in any Loan Document or delay by the Lender in exercising the same shall not operate as a waiver by the Lender of its right to exercise any such right, remedy or option. No waiver by the Lender shall be effective unless it is in writing and then only to the extent specifically stated. This Guaranty cannot be amended, modified, changed or terminated orally.

73.     Section 6.3 of the Guaranty contains a merger/integration clause which provides that the Guaranty constitutes the entire agreement between the parties with respect to the subject matter of the Guaranty, and supersedes all prior written and oral agreements and understandings.

74.     Section 6.7 of the Guaranty provides that it shall be governed by and construed in accordance with Minnesota law.  Section 6.7 further provides that Guarantor irrevocably and unconditionally consents to jurisdiction and venue in Minnesota federal courts and waives any objection thereto.

75.     In Section 6.8 of the Guaranty, Guarantor waived any right to a jury trial in any proceeding directly or indirectly arising out of or relating to the Guaranty.

## O.    DEFENDANT'S LIABILITY TO PLAINTIFF UNDER THE GUARANTY

76.    As of November 17, 2025, the aggregate outstanding balance of the Loan is **$20,351,347.58**, which includes principal and interest through November 17, 2025, but does not include interest accruing after November 17, 2025 or any fees, costs, expenses and other amounts owing by the Borrowers and Guarantor under the Loan Documents (the "Indebtedness").

77.    The Indebtedness due in respect of the Loan referenced in the immediately-preceding paragraph is subject to the Guaranty, and is immediately due and payable in full thereunder.

78.    As of the date hereof, Defendant has not performed and is in breach of his obligations under the Guaranty, including without limitation, paying the Indebtedness in full.

79.    Interest continues to accrue on the Indebtedness at the "Default Rate."

80.    Plaintiff brings this action to pursue its rights, claims and remedies under the Guaranty without waiver of or prejudice to all other rights, claims and remedies under the Loan Documents against Borrower, all of which are reserved.

**CAUSE OF ACTION**
**BREACH OF CONTRACT (GUARANTY)**

81.    Plaintiff repeats and incorporates the allegations from the preceding paragraphs as though fully set forth herein.

82.    The Guaranty is a valid and binding contract.

83.    The Loan Documents are in default.

84.     In the Guaranty, Defendant unconditionally, absolutely, irrevocably guaranteed all payments due and payable under the Note, including, without limitation, payments of principal and/or interest, and all other obligations under the Loan Documents.

85.     By his actions and inactions described herein, Defendant breached his contractual obligations under the Guaranty.  Specifically, Defendant has failed to pay the total Indebtedness due and owing under the Note and all other obligations under the Loan Documents.

86.     Defendant's breach of the Guaranty is material.

87.     By executing the Guaranty, Defendant waived, among other things, setoffs and counterclaims and all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of, and reliance on, the Guaranty, as well as all defenses available to a surety, guarantor, or accommodation co-obligor other than the full payment of the Guaranteed Obligations. Defendant also agreed to pay all reasonable costs, expenses and fees, including, without limitation, all reasonable attorneys' fees, incurred by the Lender in enforcing or attempting to enforce this Guaranty following any default on the part of the Guarantor.

88.     As a direct, foreseeable and proximate cause of Defendant's breach of the Guaranty, Plaintiff has incurred and is entitled to recover the Indebtedness, plus pre- and post-judgment interest, as well as an award of its reasonable attorneys' fees, expenses, and court and other litigation costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Bell Bank prays for the following relief:

1.    Judgment entered in favor of Plaintiff and against Defendant in the amount of the Indebtedness;

2.    An award to Plaintiff of all its reasonable attorneys' fees, expenses, and court and other litigation costs;

3.    An award to Plaintiff of all pre- and post-judgment interest, as authorized or allowed by law; and

4.    All other relief deemed just and equitable by the Court.

Dated:  November 26, 2025                     **TAFT STETTINIUS & HOLLISTER LLP**

By:_____/s/Jason R. Asmus_____
       Jason R. Asmus (#0319405)
       Jordan L. Weber (#0396769)
       Erik W. Allerson (#0403476)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 977-8400
jasmus@taftlaw.com
jweber@taftlaw.com
eallerson@taftlaw.com

**ATTORNEYS FOR PLAINTIFF BELL BANK**